IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEON LAMAR McGHEE #145983 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-CV-415-MHT-JTA |
| | ) | (WO) |
| | ) | |
| WARDEN DERRICK CARTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on June 29, 2017 by Leon Lamar McGhee, an indigent state inmate, challenging actions which occurred on April 25, 2017 at Bullock County Correctional Facility. (Doc. 1 at pp. 2-4). Specifically, McGhee alleges that the defendants acted with deliberate indifference when they failed to protect him from an attack by another inmate on April 25, 2017 and when they failed to provide him constitutionally adequate medical care. (Doc. 1 at p. 3). Further, he claims that the defendants failed to provide him with a mattress from May 4, 2017 through June 27, 2017. (Doc. 1 at p. 3). The named medical defendants are Doctor Earl Joyner and Corizon, LLC, and the named correctional defendant is Warden Derrick Carter. (Doc. 1 at p. 2). McGhee does not specify whether he sues the defendants in

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

their individual or official capacities.  He seeks both monetary damages and injunctive relief in this cause of action.   (Doc. 1 at p. 4).

The medical defendants filed a special report (Doc. 17, Ex. 1), which included relevant evidentiary materials in support of these reports, specifically affidavits, prison documents and medical records, addressing the claims presented by McGhee. At the direction of the court, the medical defendant also filed the medical grievance policy and copies of medical grievances submitted by the plaintiff in 2017 (Doc. 24, Ex. 1) and additional medical records for the period covering June 4, 2016 through July 3, 2017 which were made by Defendant Doctor Joyner upon his evaluation of the plaintiff.  (Doc. 25, Ex. 1).  The correctional defendant also filed a special report (Doc. 22, Ex. 1-3), which included specifically an affidavit and prison documents addressing the claims presented by the plaintiff.  In these documents, the defendants deny they acted with deliberate indifference to McGhee's safety or medical needs.

After reviewing the special reports and exhibits, the court issued an order on September 29, 2017, requiring McGhee to file a response to the defendants' special reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  These orders specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the**

**parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 27 at 3-4) (emphasis added).  McGhee filed a response to this order.  (Doc. 28).

Pursuant to the directives of the order entered on September 29, 2017, the court now treats the defendants' special report (Doc. 22) and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility

---

[2] Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24.  The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant

4

documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.").  Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.  *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).   In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

      To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be

admissible at trial supporting each essential element of his claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted).  Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's

6

case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.  "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in

7

substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323–24.  A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.  *Id*.  To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

8

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, McGhee's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that McGhee has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. FACTS

In his complaint, the plaintiff alleges that he did not have a mattress from May 4, 2017 until June 27, 2017. (Doc. 1 at p. 3). Defendant Warden Carter states in his affidavit that the plaintiff was transferred to Bullock on June 13, 2016 and at that time he was given one mattress. (Doc. 22-1 at p. 1). The plaintiff also claims that "he has witness [sic] inmates get assaulted, die in the shower, get stab; [sic] and killed in I-dorm and in each incident a [sic] officer wasn't around." (Doc. 1 at p. 3). Defendant Warden Carter states in his affidavit that he "has no knowledge of what inmate McGhee has witnessed in the dormitory." (Doc. 22-1 at pp. 1-2). Finally, the plaintiff alleges that on

April 25, 2017, he was assaulted by other inmates and he "wasn't afforded the proper medical care, his hand was broken during a [sic] assault and he didn't receive a [sic] x-ray until 5-3-17.  They wouldn't give me pain meds until it was confirm [sic] hand was broken and rib was bruise [sic]."  (Doc. 1 at p. 3).   He also claims that the defendants refused to order surgery for his loss of smell and his "blown" knee.  (*Id.*)  Finally, he claims that the treatment provided for his chronic HIV condition is constitutionally inadequate.  (Doc. 1 at p. 8).  The medical defendants deny these allegations.

The incident report for the April 25, 2017 assault states as follows:

On April 25, 2017, Correctional Officer Quaisy Holliday was assigned as the Dormitory 11-12 rover at Bullock Correctional Facility.  At approximately 8:25 AM, Officer Holliday observed inmate Leon McGhee, B/145983, standing in the grill gate area of Dormitory 12 with blood on his head and clothes.  Officer Holliday notified Correctional Sergeant Waylon Cousins of the incident.  Sergeant Cousins reported to Dormitory I and escorted inmate McGhee to the Health Care Unit.  At approximately 8:30 AM, inmate McGhee received a medical assessment from Licensed Practical Nurse Edwanna McNeil (See attached body chart).  Sergeant Cousins notified Correctional Captain Clatys Jenkins of the incident.  Sergeant Cousins questioned inmate McGhee about the incident.  Inmate McGhee stated he was jumped on but did not know who jumped on him.  Sergeant Cousins conducted an investigation by questioning several inmates in Dormitory 12.  All of the inmates questioned stated that they did not see anything.  No suspect was identified during the investigation.  At approximately 11:47 AM, Sergeant Cousins e-mailed the Duty Officer Report to Associate Commissioner Grantt Culliver, Deputy Commissioner Wendy Williams, Institutional Coordinator Cheryl Price, Public Information Officer, Robert Horton, I & I Division, Arnaldo Mercardo, LaTisha Hughes, Warden III Derrick Carter, Warden II Michael Strickland, Warden I Reosha Butler, Captains Clatys Jenkins and David Lamar.  Inmate McGhee was placed in the Segregation Unit pending further investigation.

(Doc. 22-2 at p. 1).

## IV.  DISCUSSION

### A. Sovereign Immunity

To the extent McGhee requests monetary damages from the defendants in their official capacities, they are entitled to sovereign immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity.  A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute.  Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here.  The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution)).   "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."   *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).   In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.   *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).   Thus, the court will now address the plaintiff's claims brought against defendants in their individual capacities.

## B. Respondeat Superior

In his complaint, McGhee alleges no specific actions of Defendant Warden Carter or against the corporate defendant, Corizon LLC, to support his claims for deliberate indifference.   Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."   *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).   Additionally, a plaintiff can establish supervisory liability if he establishes a

causal connection between the defendants' actions and the alleged constitutional violations. *Hendrix v. Tucker,* 535 F. App'x 803, 805 (11th Cir. 2013).

The law is well settled. "A plaintiff may establish a causal connection by showing that (1) 'a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so'; (2) 'the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights'; or (3) 'facts support an inference that the supervisor directed the subordinates to act unlawfully and knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (citation omitted). Indeed, "[t]he standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (citation omitted).

The court has carefully reviewed the plaintiff's allegations in his complaint (Doc. 1), his responses to the defendants' special reports and attached documents (Doc. 28, Ex. 1-2), and the records from the Bullock County Correctional Facility (Doc. 22, Ex. 1-3). None of his complaints create an issue of fact sufficient to meet the plaintiff's burden on summary judgment of demonstrating "widespread abuse" which could have put Defendant Warden Carter or Corizon, LLC on notice that the plaintiff's constitutional rights were being violated. Further, with respect to each of the plaintiff's claims, the court concludes that the plaintiff fails to adduce any evidence that Defendant Warden Carter or Corizon, LLC had an "improper custom or policy" which violated the plaintiff's

13

constitutional rights or that Defendant Warden Carter or Corizon, LLC "directed" subordinates to act unlawfully toward the plaintiff while knowing they would act unlawfully and failing to prevent their actions. *Hendrix,* 535 F. App'x at 805. Although the court could dismiss the claims against Defendant Warden Carter and Corizon, LLC on this basis alone, for the sake of a thorough analysis, the court now turns its attention to the merits of each of the plaintiff's claims.

## C. Deliberate Indifference

### 1. <u>Standard of Review</u>

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional

liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).  Correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").  In determining whether a delay in medical treatment constituted deliberate indifference, the court considers the seriousness of the medical need, whether the delay worsened the medical condition, and the reason for the delay.  *See Goebert v. Lee County, Fla*., 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003).  Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" which establishes the detrimental effect caused by the delay to succeed on his claim.  *Surber v. Dixie County Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence

or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual

Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively
> aware of the substantial risk of serious harm in order to have had a
> '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114
> S. Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321,
> 2324-25, 115 L. Ed. 2d 271 (1991). . . . Even assuming the existence of a
> serious risk of harm and legal causation, the prison official must be aware
> of specific facts from which an inference could be drawn that a substantial
> risk of serious harm exists – and the prison official must also "draw that
> inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective

knowledge of the risk must be specific to that defendant because "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each

individual Defendant must be judged separately and on the basis of what that person

[knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir.

2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a

mere possibility before a [state official's] failure to act can constitute deliberate

indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal

quotation marks and citations omitted). Thus, "[m]erely negligent failure to protect an

inmate from attack does not justify liability under section 1983." *Id.* Even where a

prison official perceives a serious risk of harm to an inmate, the official "may still prevail

if he responded reasonably to the risk, even if the harm ultimately was not averted."

*Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and

citation omitted).   In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk.  *Farmer*, 511 U.S. at 837.

## 2.  Failure to Protect

To survive the properly supported motion for summary judgment filed by the defendants, McGhee must first demonstrate an objectively substantial risk of serious harm existed to him from another inmate and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner."  *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citing *Caldwell*, 748 F.3d at 1100).   If he establishes these objective elements, McGhee must then satisfy the subjective component.  This requires McGhee to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."  *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff***."   *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added).   Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference."  *Id*. at 1349 (quotations omitted).).

19

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Based upon the court's careful review of all the evidence, the court concludes that the plaintiff fails to even allege, much less offer any proof, that Defendant Warden Derrick Carter was aware he was at risk for assault on April 25, 2017.  Rather, the plaintiff merely argues that "Warden Derrick Carter should have known what's going on within the confinement of his appointed prison."  (Doc 28 at p. 6).  Accordingly, the court concludes that summary judgment is due to be granted in favor of the defendant on the claim alleging he acted with deliberate indifference to McGhee's safety.

### 3.  Failure to Provide a Mattress

The plaintiff alleges that while at Bullock he was denied a mattress from May 4, 2017 until June 27, 2017. (Doc. 1 at p. 3).  However, the undisputed evidence from Warden Carter shows that the plaintiff was transferred to Bullock on June 13, 2016 and at that time he was given one mattress.  (Doc. 22-1 at p. 1).  Even assuming, though, that the plaintiff was denied a mattress for a period of time ranging from two weeks to almost two months, the court concludes that the plaintiff fails to demonstrate an Eighth Amendment violation on the basis of this cursory allegation.

The law is well-settled.  A prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer*, 511 U.S. at 832 (quoting

*Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *Helling*, 509 U.S. at 31–32.  However, for liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289–90 (11th Cir. 2004).  As with deliberate indifference claims, to demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry.  *Farmer*, 511 U.S. at 834.  The court previously identified the applicable standard relevant to establishment of the objective and subjective elements of an Eighth Amendment claim. *See supra*. at 14-18.

Based upon a careful review of all the evidence, the court concludes that the plaintiff fails to demonstrate that the alleged deprivation of a mattress has created a serious risk to his future health.  *Chandler,* 379 F.3d at 1289–90.  Moreover, the court concludes that there is no evidence that Defendant Warden Carter was aware of this alleged deprivation.  *Farmer*, 511 U.S. at 834.  Indeed, Warden Carter testified that he had no knowledge of the plaintiff not having a mattress and that the plaintiff was provided a mattress upon his transfer to Bullock.  (Doc. 22-1 at p. 1).  Finally, the Eleventh Circuit has clearly stated that "[o]bjectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency."  *Alfred v. Bryant,* 378 F. App'x 977, 980

(11th Cir. 2010) (citing *Hamm v. DeKalb County,* 774 F.2d 1567, 1575–76 (11th Cir. 1985)).  Thus, the court concludes summary judgment is due to be granted on this claim.

### 4.  Deficient Medical Treatment

McGhee alleges the defendants acted with deliberate indifference to his medical needs because they delayed in treating him for injuries received in an April 25, 2017 altercation.  Specifically, he alleges the defendants delayed in having his broken hand x-rayed and delayed in providing him pain medication.  (Doc. 1 at p. 3).  He also claims the defendants have refused to order surgery for his loss of smell and his "blown" left knee. *Id.* [3]  Finally, he claims that inadequate health care is provided to HIV positive inmates at Bullock County Correctional Facility and that since June 20, 2017 he has not personally seen his HIV specialist, Dr. Earl Joyner, but has only seen him via telecommunication. (Doc. 1 at p. 8).

In his affidavit, Tahir Siddiq, M.D. states as follows:

My name is Tahir Siddiq, M.D. I am over the age of nineteen (19) years, and I have personal knowledge as to all matters stated herein.

I am a licensed physician in the state of Alabama.  I currently serve as the Medical Director at the Bullock County Correctional Facility located in Union Springs, Alabama.  I am employed by Corizon.  Corizon is the entity that currently holds the contract with the Alabama Department of Corrections to provide medical care and services to state inmates

---

[3] None of the medical records include documentation of plaintiff complaining about a hurt knee or a loss of smell.  Neither do these records reflect any treatment provided to the plaintiff for either of these conditions.  (Doc. 17-1 at pp. 1-62; Doc. 25-1 at pp. 1-27).  Moreover, none of the 2017 medical grievance records include any complaints by the plaintiff of a failure of medical staff to treat these conditions.  (Doc. 24-1 at pp 1-31).

incarcerated within the Alabama State Correctional Facilities. Corizon has held the contract with the Alabama Department of Corrections since November 1, 2007.

I have reviewed and I am familiar with the legal Complaint that has been filed by inmate Leon Lamar McGhee (AIS # 145983).

I am aware that Mr. McGhee alleges that he did not receive adequate and proper medical treatment subsequent to an assault that took place on April 25, 2017 at the Bullock County Correctional Facility.

I have attached hereto the relevant medical records pertaining to Mr. McGhee's medical treatment while Mr. McGhee has been a state inmate incarcerated by the Alabama Department of Corrections at the Bullock County Correctional Facility.

On April 25, 2017 (Tuesday) at approximately 8:30 a.m., Mr. McGhee was brought to the Health Care Unit at the Bullock County Correctional Facility by an Alabama Department of Corrections Sergeant. A nurse completed a body chart documentation form with regards to multiple injuries received by Mr. McGhee. Mr. McGhee, pursuant to the body chart, received multiple lacerations and bruises that appeared to be the result of an altercation with another inmate. Mr. McGhee informed the nurse: "I don't know what happened. Furthermore, McGhee refused to allow the nurse to access his lower extremities (waist down), but stated that he had no injuries in the lower portion of his body.

The nurse completed a Nursing Encounter Tool on that same date, April 25, 2017. When the nurse asked Mr. McGhee what was his chief complaint, Mr. McGhee responded "ain't nothing wrong, I'm alright." Mr. McGhee further denied any associated factors or any pertinent medical conditions.

The nurse noted that Mr. McGhee had a contusion to his left forearm. The nurse wrote a prescription for Tylenol No. 3 for pain for Mr. McGhee and ordered an x-ray for Mr. McGhee and thereafter released Mr. McGhee to the custody of the Alabama Department of Corrections.

Mr. McGhee completed a Sick Call Request on April 28, 2017, indicating that his left side was sore, including his ribs, hand and arm. Mr.

McGhee states on the Sick Call Request that he had been in pain since April 25, 2017. However, his report completed on the Sick Call Request was different from the information that he provided to the nurses who completed their assessment of Mr. McGhee on April 25, 2017, when Mr. McGhee had refused treatment and informed the nurses that he was not having any particular problems.

Although the nurse had noted that Mr. McGhee's left forearm needed x-rays, there was no indication from Mr. McGhee that the x-rays needed to be done immediately.

Subsequent to Mr. McGhee completing the Sick Call Request on April 28, 2017, a series of x-rays were taken on May 1, 2017. The Radiologist read those x-rays as follows:

**Forearm AP and LAT, Left**

Results:  left radius and ulna have normal ossification pattern.  No fracture or dislocation is seen.  The elbow and wrist joints are grossly intact.

Conclusion:  Normal left forearm

**Hand minimum three views, Left**

Results:  There is an impacted fifth metacarpal neck fracture without dislocation.  There is associated soft tissue swelling.

Conclusion:  Acute fifth metacarpal neck fracture

**Ribs and Chest MIN 4 V**

Results:  The bony ossification of the bilateral ribs is normal.  There is no fracture or costovertebral dislocation.  No pneumothorax is seen.

Conclusion:  Normal bilateral rib series.

I personally saw Mr. McGhee on May 2, 2017 and ordered a consultation request for Dr. Chung, an orthopedic specialist in Montgomery, Alabama due to the x-rays related to Mr. McGhee's hand.

Mr. McGhee was in fact transported out of the Correctional Facility on May 5, 2017 for an appointment to be seen by Dr. Chung. Dr. Chung reviewed the x-rays with Mr. McGhee and Mr. McGhee informed Dr. Chung that he wants to go forward with the surgery to repair the fracture to his hand.

Mr. McGhee in fact underwent surgery by Dr. Chung on May 12, 2017.

Upon Mr. McGhee's return to the Health Care Unit he was provided with a sling for 90 days subsequent to the hand surgery.

On May 22, 2017, follow-up x-rays were taken of Mr. McGhee's hand. The radiologist read the x-rays as follows:

**Hand minimum three views, left**

Results:

Comparison: None

Findings:

Fixation: Hardware is noted with no acute fracture identified. Normal alignment is maintained. The soft tissues are unremarkable. No lucency around the hardware is seen.

Conclusion: Fixation of a fourth metacarpal fracture.

Mr. McGhee had a follow-up appointment on June 6, 2017, but refused to be seen in Sick Call and signed a Release of Responsibility and, in fact, refused to sign the Release of Responsibility on June 6, 2017. Mr. McGhee again refused to be seen in Sick Call on June 13, 2017.

Mr. McGhee's left hand appears to be healing and Mr. McGhee has not suffered any detrimental effects since his surgery.

As previously stated, Mr. McGhee was seen in the Health Care Unit on April 25, 2017 after what appeared to be an altercation with another inmate or inmates. Mr. McGhee did not tell the nurse when performing her

25

evaluation that he was having any problems with his hand.  He appeared thereafter, several days later, on April 28, 2017 and Mr. McGhee returned to the Health Care Unit after completing his Sick Call Request complaining of pain in his hand and arm on his left side.  Mr. McGhee was in fact seen in the Health Care Unit subsequent to the Sick Call Request on April 29, 2017.  Thereafter, a series of x-rays were taken of Mr. McGhee's forearm, ribs and hand.  The only problems noted by the Radiologist were to Mr. McGhee's left hand.

Thereafter, Mr. McGhee was seen by me and I made an appointment for Mr. McGhee to be seen by an outside Orthopedic Specialist.  Mr. McGhee was thereafter transported out to see Dr. Tai Chung, an Orthopedic Surgeon and thereafter had the fracture completed satisfactorily by the Orthopedic Specialist, Dr. Chung.

Mr. McGhee's necessary medical treatment was at no time delayed or denied by me or any of the medical staff at the Bullock County Medical Facility.

I am personally aware of Mr. McGhee's medical complaints and medical needs, as well as Mr. McGhee's medical treatment.  It is my personal opinion that Mr. McGhee at all times received medical care within the standard of care of physicians practicing medicine in the state of Alabama.

(Doc. 17-1 at pp. 2-9).

The court has carefully reviewed all the medical records provided (Doc. 17-1 at pp. 10-62; Doc. 25-1 at pp. 1-27), including the Affidavit of Tahir Siddiq, MD, set out in full above. (Doc. 17-1 at pp. 2-9).  These records demonstrate that Defendant Doctor Earl Joyner did not personally see or treat the plaintiff for injuries resulting from the April 25, 2017 altercation, but did provide treatment to plaintiff for his HIV condition and numerous related ailments from June 4, 2016 until July 3, 2017.  (Doc. 25-1 at pp. 1-27).

Specifically, the plaintiff complains that due to his HIV condition he suffers from boils, skin rashes, dry skin and athlete's foot.  (Doc. 1 at p. 8).

These records demonstrate that Dr. Joyner noted "poor adherence" to his medicine regimine during a July 12, 2016, telemedicine visit with the plaintiff, (Doc. 25-1 at p. 3), but that the plaintiff was taking his HIV medications "more regularly" when he saw him again during a November 11, 2016, telemedicine visit.  (Doc. 25-1 at p. 8).  At this visit Dr. Joyner prescribed Bactrim DS for plaintiff's cough and Eucerin from his dry skin.  *Id.* Dr. Joyner renewed the Eucerin prescription on January 31, 2017, at the next telemedicine visit.  (Doc. 25-1 at p. 19).  Additionally, antifungal cream for athlete's foot and hydrocortisone cream were prescribed for the plaintiff on May 16, 2017.  (Doc. 25-1 at p. 24).  Also, Dr. Joyner prescribed a daily multivitamin with vitamin B Complex with C and Folic Acid for plaintiff's low weight.  (Doc. 25-1 at p. 25).  Furthermore, the documents from the quarterly telemedical visits show that Dr. Joyner prescribed and monitored the plaintiff's HIV medications and that lab work was performed on the plaintiff every eight weeks.  (Doc. 25-1 at pp. 3, 8, 19, 27).

With respect to treatment for plaintiff's injuries received during the April 25, 2017 altercation, the medical records demonstrate that the plaintiff was seen by a nurse within minutes of the assault and a body chart was completed noting bruising and slight edemas and redness to portions of his upper back and multiple lacerations to his head and face.  (Doc. 17-1 at p. 24; Doc. 22-3 at p. 1).  Additionally, a nursing encounter tool completed

the same day notes a forearm contusion (Doc. 17-1 at p. 22) and shows that Tylenol #3 was prescribed for pain, an x-ray of his forearm was ordered and steri-strips were applied to the lacerations.  (Doc. 17-1 at p. 23).

The plaintiff completed a sick call request on April 28, 2017 complaining about soreness on his left side and ribs and swelling in his left hand and arm. (Doc. 17-1 at p. 25).  On May 1, 2017, X-rays were taken of the plaintiff's left forearm and hand and his ribs and chest.  The forearm and rib x-rays were normal, but the left hand x-ray showed an "acute fifth metacarpal neck fracture."  (Doc. 17-1 at pp. 26-27).  On May 3, 2017, the plaintiff completed a sick call request complaining of hand and rib pain and requesting a stronger pain medication.  (Doc. 17-1 at p. 31).  Dr. Siddiq again prescribed Tylenol with Codeine #3.  (Doc. 17-1 at p. 32).

On May 11, 2017 surgery was performed off site on the plaintiff's left hand by orthopedic surgeon, Tai Q. Chung.  He returned to Bullock on May 12, 2017 with his arm in a sling. (Doc. 17-1 at pp. 39-44).  He was given a bottom bunk profile and instructed to wear a sling for 30 days.  (Doc. 17-1 at p. 47).  On May 22, 2017, another x-ray was performed on the plaintiff's left hand which showed "fixation hardware is noted with no acute fracture identified.  Normal alignment is maintained."  (Doc. 17-1 at p. 50).

On June 5, 2017, the plaintiff completed another sick call request complaining of hand and rib pain.  (Doc. 17-1 at p. 55).  However, the plaintiff refused sick call on June 6, 2017.  (Doc. 17-1 at p. 56).  He was seen at the HCU on June 11, 2017 and instructed

to apply "support wraps to affected hand daily during dressing x 30 days."  (Doc. 17-1 at p. 57).  The plaintiff refused sick call on June 13, 2017.  (Doc. 17-1 at p. 60).  However, a nursing encounter tool was completed on June 13, 2017, which documented that the plaintiff was seen in the HCU at 7:25 a.m.  At this time, he complained of left hand pain but stated that Tylenol eased the pain. (Doc. 17-1 at p. 58).  On July 6, 2017, Dr. Siddiq prescribed Tylenol for pain for ten days.  (Doc. 17-1 at p 62).  Furthermore, the medical records indicated that Tylenol with Codeine was prescribed several times for the plaintiff beginning on April 25, 2017 through July 1, 2017.  (Doc. 17-1 at pp. 19, 23, 32, 52, 54).

Based upon the medical evidence of record, the court concludes that the plaintiff has failed to prove that the medical treatment for his injuries was delayed or that his condition was made worse by the alleged delay.  *Surber,* 206 F. App'x at 933. Furthermore, the court concludes that the record is devoid of evidence—significantly probative or otherwise—showing that the medical defendants acted with deliberate indifference to the plaintiff's medical needs resulting from his injuries received during the April 25, 2017 altercation or  resulting from his chronic HIV condition.  *See Hamm,* 774 F.2d at 1575) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution).  For the foregoing reasons, summary judgment is due to be granted in favor of defendants on the plaintiff's claim of deliberate indifference due to a delay in medical treatment.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment (Doc. 22) be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **July 14, 2020**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 29th day of June, 2020.


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE